IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JEREMIAH BEVERLY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | NO. 3:07-CV-135 |
| | ) | |
| EDWARD BUSS, | ) | |
| | ) | |
| Respondent. | ) | |

<u>OPINION AND ORDER</u>

This matter is before the Court on the Petition for Writ of Habeas Corpus and Request for Appointment of Counsel, filed by Jeremiah Beverly, a *pro se* prisoner, on March 27, 2007. The instant habeas corpus petition seeks relief under 28 U.S.C. section 2254. For the reasons set forth below, the motion for appointment of counsel is **DENIED** and the habeas corpus petition is **DENIED** pursuant to Section 2254 Habeas Corpus Rule 4.

<u>DISCUSSION</u>

Beverly raises three grounds challenging his criminal conviction on March 6, 2003 in the Marion Superior Court which imposed a 35 year sentence in cause number 49G05-0111-CF-216204: (1) Denial of the right to confront a witness because of the admission of hearsay testimony of the deceased victim, (2) Denial of the right to remain free from unreasonable seizure, and (3)

Insufficient evidence to support his conviction for voluntary manslaughter.

Facts

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Here, Beverly challenges only legal determinations and the application of the law to the facts. He does not challenge the determination of the facts, therefore this court must accept the facts as described by the Court of Appeals of Indiana.

> The facts most favorable to the verdict reveal that on November 9, 2001, Beverly pulled his gold GMC Yukon into the parking lot of the Creekwood Apartments on the northwest side of Indianapolis, where he lived off and on with his girlfriend. As Beverly walked away from his Yukon, a blue-gray older model Oldsmobile, driven by Tony Robinson, pulled in behind it. Although the facts are unclear about what transpired next, it appears that a passenger in Robinson's Oldsmobile, who was never identified, exited the Oldsmobile, and shots were exchanged between the unidentified passenger and Beverly. As the unidentified passenger started running away, Beverly fired two more shots in his direction. Robinson then sped off in his Oldsmobile, and Beverly jumped into his Yukon and followed him.

> After exiting the apartment complex, Beverly chased Robinson south on Michigan Road. Joseph Gianforte, a motorist traveling southbound on Michigan Road at the same time,

heard popping noises and then observed a "golden-colored SUV" closely following an "old looking car." As the cars passed him, Gianforte saw the driver of the SUV "hanging out of his driver's side window holding a gun and firing it" at the older car. Charles Smith was also traveling southbound on Michigan Road around the same time when he heard three "pops." He then heard a single pop to his left as a "blond" or "brown" SUV passed him. After the SUV passed him, Smith observed the driver of the SUV "leaning or hanging out the window."

Anthony Smith, Jr., who knew Beverly from high school, was driving north on Michigan Road in his Chevrolet Caprice when he saw Beverly driving south in his Yukon. Beverly waved to Anthony, so Anthony followed him. Anthony eventually pulled his Caprice alongside Beverly's Yukon as both cars were traveling southbound on Michigan Road, and Beverly asked Anthony if he had his gun with him. Anthony then passed his revolver to Beverly through the car windows. Anthony stopped at a gas station, and Beverly drove on.

Thereafter, witnesses observed the Oldsmobile driven by Robinson, which was being pursued by another car, collide with a third car at the intersection of Michigan Road and Kessler Boulevard. Robinson then crashed into two other cars and landed in a ditch. Witnesses also saw a gold SUV in the vicinity of the crash.

Beverly eventually returned to the gas station where Anthony was waiting, exited his Yukon, and entered Anthony's Caprice. Beverly then instructed Anthony to drive "to a certain spot on Michigan Road," where Anthony observed a car with bullet holes in the rear windshield in the ditch. After Beverly confirmed that Robinson was still in the car, Anthony drove him back to the gas station where he left his Yukon. After Beverly exited Anthony's car, Anthony observed two guns on the seat, the one he had given Beverly and another one.

Thomas Adams, a firefighter/paramedic with the Washington Township Fire Department, arrived at the intersection of Michigan Road and Kessler Boulevard and discovered Robinson slumped over in his car. Adams asked Robinson, who was in a "decreased" state of consciousness and "lethargic," if he had been shot. When Robinson did not respond, Adams more forcefully asked, "Who shot you?" This time, Robinson responded, "Jerry shot me." As Adams was removing Robinson from his car, he noticed a gunshot wound to the back of Robinson's head. Robinson was then taken to the hospital, where he died the next day from the gunshot wound.

Marion County Sheriff's Deputies Debora Oatis and Dennis Nike received a dispatch of a "shots fired call" involving a gold, full-size SUV driven by a light-skinned black male that was in the vicinity of Michigan Road and 71st Street. Specifically, dispatch "had received numerous phone calls over a matter of maybe five or six minutes saying that this vehicle was driving up and down Michigan Road shooting," and dispatch had relayed that information to the deputies. When Deputies Oatis and Nike arrived at Michigan Road and 71st Street, they observed a gold SUV pull into a gas station and stopped it. Beverly then "jumped out of" his Yukon and started walking toward the deputies yelling and waving his arms. Beverly stated that "someone was trying to kill his girlfriend. . . . They're shooting at her." Eventually, the deputies handcuffed Beverly. When Sergeant Scott Scales from the Marion County Sheriff's Department arrived on the scene, he read Beverly his Miranda rights and then questioned him. Beverly told Sergeant Scales that "somebody tried to carjack him. There was a chase that ensued. They shot at him." Beverly also explained that his friend gave him a gun, and then he fired the gun at the other vehicle and returned it to his friend.

The State subsequently charged Beverly with murder and carrying a handgun without a license as a Class C felony. Before trial, Beverly filed a motion to suppress the

statements he made to the deputies during the investigatory stop and a motion in limine to exclude Robinson's statement to the paramedic that Beverly had shot him. After a hearing, the trial court denied both motions. After a bench trial, the trial court found Beverly guilty of Voluntary Manslaughter as a Class A felony as a lesser-included offense of murder and Carrying a Handgun Without a License as a Class C felony  and sentenced him to an aggregate sentence of forty years with five years suspended. This appeal ensued.

*Beverly v. State*, 801 N.E.2d 1254, 1256-58 (Ind. Ct. App. 2004)

(citations, brackets, and footnote omitted).


Legal Standards

AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (citations omitted).

A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied a Supreme Court case incorrectly. Rather it is the habeas applicant's burden to show

that the state court applied that case to the facts of his case in
an objectively unreasonable manner.

*Price v. Vincent*, 538 U.S. 634, 641 (2003) (quotation marks,

citations and brackets omitted).


Hearsay Testimony

Beverly argues that he was denied the right to confront a

witness against him when the trial court permitted the hearsay

testimony of the deceased victim.

> At trial, the State offered the victim's
> statement to Thomas Adams, an EMT and
> Washington Township firefighter, that "Jerry
> did it." This statement was inadmissible
> hearsay: Beverly did not have an opportunity
> to confront the declarant and the statement
> was offered to prove the matter asserted.
> Counsel objected to the admission of this
> statement, but the court allowed it to come
> in. It should not have been admitted.

Petition at ¶ 12.A.

On March 8, 2004, more than a month before the Indiana Supreme

Court denied his petition to transfer on April 23, 2004, the United

States Supreme Court announced a new rule interpreting the

interrelationship between the confrontation clause and the hearsay

rule, but it left open the question of whether dying declarations

were an exception to the confrontation clause.

> The one deviation we have found involves
> dying declarations. The existence of that
> exception as a general rule of criminal
> hearsay law cannot be disputed. *See, e.g.,*
> *Mattox v. United States*, 156 U.S. 237,
> 243-244, 39 L. Ed. 409, 15 S. Ct. 337 (1895);
> *King v Reason*, 16 How. St. Tr. 1, 24-38 (K. B.
> 1722); 1 D. Jardine, Criminal Trials 435

> (1832); Cooley, Constitutional Limitations, at
> *318; 1 G. Gilbert, Evidence 211 (C. Lofft ed.
> 1791); see also F. Heller, The Sixth Amendment
> 105 (1951) (asserting that this was the only
> recognized criminal hearsay exception at
> common law). Although many dying declarations
> may not be testimonial, there is authority for
> admitting even those that clearly are. *See
> Woodcock, supra*, at 501-504, 168 Eng. Rep., at
> 353-354; *Reason, supra*, at 24-38; Peake,
> Evidence, at 64; *cf. Radbourne, supra*, at
> 460-462, 168 Eng. Rep., at 332-333. We need
> not decide in this case whether the Sixth
> Amendment incorporates an exception for
> testimonial dying declarations. If this
> exception must be accepted on historical
> grounds, it is *sui generis*.

*Crawford v. Washington*, 541 U.S. 36, 56 n.6 (2004). Because the United States Supreme court explicitly declined to decide whether the admission of dying declarations violated the Sixth Amendment, there was no clearly established United State Supreme Court law on this question. Indeed, the court intimated that such an exception could well exist when it cited authority in support of the exception. In light of *Crawford*, this Court cannot say that the State of Indiana unreasonably applied clearly established Federal law.


Unreasonable Seizure

Beverley argues that it was unreasonable for the police to have seized him and that the court should not have admitted the statements he made to the police because he made them while in unlawful custody.

> Acting on information obtained from
> several anonymous callers, police officers

detained Beverly. Once detained, Beverly gave a statement admitting his involvement in the shooting exchange that led to the instant charges. The trial court allowed this statement to be admitted at trial. This statement should not have been admitted because it was the product of Beverly's illegal detention.

Petition at ¶ 12.B.

The Seventh Circuit, in *Watson v. Hulick*, noted the following:

[A] petitioner cannot obtain collateral relief on a Fourth Amendment claim unless the state courts deprived him of a full and fair opportunity to litigate the claim. In this case, Watson challenged the admissibility of his confessions in the trial court and renewed the claim before the appellate court. Watson argues that the appellate court's "failure" to consider one of the Brown factors denied him a full and fair opportunity to litigate the Fourth Amendment claim, but we have held that "full and fair opportunity" guarantees only "the right to present one's case." Watson presented his Fourth Amendment claim to the Illinois courts, and absent a subversion of the hearing process, we will not examine whether those courts got the decision right.

*Watson v. Hulick*, 481 F.3d 537, 541-542 (7th Cir. 2007) (citations, quotation marks, and brackets omitted).

Here, Beverly presented his Fourth Amendment illegal seizure claim to the state trial court and he presented the issue on appeal. Though he argues that the Indiana courts got the decision wrong, he does not challenge that he has had a full and fair opportunity to present his challenge. As such, his Fourth Amendment claim for an illegal seizure cannot be collaterally attacked in a habeas petition. Therefore the State courts' determination as to the legitimacy of the seizure remains. Since that was his only

basis for challenging the admissibility of his statements to the police, the State courts' determination as to their admissibility is also unaltered.

Sufficiency of the Evidence

Beverly argues that the evidence was not sufficient to support finding him guilty of voluntary manslaughter.

> Viewing the evidence most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Specifically, the record is devoid of evidence sufficient to prove beyond a reasonable doubt that Beverly knowingly or intentionally killed another human being. Beverly's actions were at worst reckless and his voluntary manslaughter should not be allowed to stand.

Petition at ¶ 12.C.  The Court of Appeals of Indiana addressed this claim.

> To convict Beverly of voluntary manslaughter as a Class A felony in this case, the State must have proved that Beverly knowingly or intentionally killed Robinson while acting under sudden heat and by means of a deadly weapon. Ind. Code § 35-42-1-3(a)(2). On appeal, Beverly argues that the State failed to prove that he acted knowingly or intentionally. Instead, Beverly proposes that "it could only have been bad luck that [he], driving at a high rate of speed, hanging out a window, could have fired a shot that penetrated Robinson in the back of his head." Appellant's Br. p. 16.
>
> Here, the evidence shows that Beverly exchanged gunfire with an unidentified passenger in Robinson's car in the parking lot of Creekwood Apartments, chased Robinson down Michigan Road, and fired shots at Robinson's car while leaning out his car window. And when

> Beverly's gun ran out of bullets, he stopped a
> high school friend, borrowed his gun, and
> fired more shots at Robinson's car, this time
> shooting Robinson in the back of the head. The
> trial court did not err in concluding that
> Beverly's conduct was not bad luck but instead
> constituted a knowing or intentional killing
> of Robinson. Beverly's argument is simply an
> invitation for this Court to reweigh the
> evidence, which we cannot do. The evidence is
> sufficient to support Beverly's conviction for
> voluntary manslaughter.

*Beverly v. State*, 801 N.E.2d 1254, 1263 (Ind. Ct. App. 2004).

While there may have been a low probability that Beverly would actually hit the victim while driving down the road at high speed and leaning out of the window, with as long as he pursued the victim and as many shots as he took at him, Beverly's knowledge or intent to kill was clearly established. The State courts' did not unreasonably interpret the facts.

Rule 4

> If it plainly appears from the petition and
> any attached exhibits that the petitioner is
> not entitled to relief in the district court,
> the judge must dismiss the petition and direct
> the clerk to notify the petitioner.

Section 2254 Habeas Corpus Rule 4. Here, it plainly appears from the petition that Beverly is not entitled to habeas relief.

Motion for Appointment of Counsel

In addition, Beverly filed a motion asking to be appointed counsel. As the Seventh Circuit has repeatedly recounted, whether an attorney should be recruited to represent a pro se litigant is

a two-step inquiry: given the difficulty of the case, does the plaintiff appear to be competent to try it himself, and if not, would the presence of counsel have made a difference in the outcome? *Johnson v. Doughty*, 433 F.3d 1001, 1007 (7th Cir. 2006).

Here, as discussed, the petition plainly has no merit. The presence of counsel could not change this outcome. Therefore it would be of no benefit to appoint counsel and the motion is denied.

CONCLUSION

For the reasons set forth above, the motion for appointment of counsel is **DENIED** and the habeas corpus petition is **DENIED** pursuant to Section 2254 Habeas Corpus Rule 4.

DATED: June 4, 2007                    /s/RUDY LOZANO, Judge
                                       United States District Court